## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re:<br>MALLINCKRODT PLC, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Bankruptcy Case No. 20-12522 (JTD)<br><br>(*Jointly Administered*) |
| CITY OF ROCKFORD, etc. et al.,<br>Appellants,<br><br>V,<br><br>MALLINCKRODT PLC, *et al.*,<br>Appellees. | Case No. 1:22-cv-00321 (TLA)<br><br>On Appeal from the United States<br>Bankruptcy Court for the District of<br>Delaware |

## <u>APPELLANTS' OPENING BRIEF</u>

Dated: June 13, 2022

**CIARDI CIARDI & ASTIN**
Daniel K. Astin (No. 4068)
1204 North King Street
Wilmington, DE 19801
Telephone: (302) 384-9541
Facsimile: (302) 658-1300
dastin@ciardilaw.com

 -and-

Albert A. Ciardi, III, Esq.
Walter W. Gouldsbury III, Esq.
(*Pro hac vices* forthcoming)
1905 Spruce Street
Philadelphia, PA 19103
Telephone: (215) 557-3550
aciardi@ciardilaw.com
wgouldsbury@ciardilaw.com

1

-and-

**HAVILAND HUGHES**
Donald E. Haviland, Jr., Esquire
(*Pro hac vice* forthcoming)
201 S. Maple Ave., Suite 110
Ambler, PA 19002
Telephone: (215) 609-4661
Facsimile: (215) 392-4400
haviland@havilandhughes.com

-and-

Dion G. Rassias, Esquire
Jillian E. Johnston, Esquire
(*Pro hac vice* forthcoming)
THE BEASLEY FIRM, LLC
1125 Walnut Street
Philadelphia, PA  19107
T: 215-592-1000
dgr@beasleyfirm.com
Jill.johnston@beasleyfirm.com

-and-

James R. Bartimus, Esquire
Anthony L. DeWitt, Esquire
(*Pro hac vices* forthcoming)
BARTIMUS, FRICKLETON, ROBERTSON, RADAR PC
11150 Overbrook Road
Leawood, KS 66211
(913) 266-2300
(913) 266-2366 (fax)


*Attorneys for Appellants*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ..................................................... 5

TABLE OF AUTHORITIES ..................................................... 6

JURISDICTIONAL STATEMENT ..................................................... 8

STATEMENT OF THE CASE ..................................................... 10

    **A.**   **Status and Standing of Appellants** ..................................... 10

    **B.**   **The Curascript Contract** ..................................... 10

    **C.**   **Appellants' Motion to Dismiss the Assumption Motion** ................... 11

    **D.**   **The Adversary Proceeding** ..................................... 12

    **E.**   **Continuing Efforts To Get Judicial Findings** ..................... 13

SUMMARY OF THE ARGUMENT ..................................................... 16

ARGUMENT ..................................................... 18

I.    THE BANKRUPTCY COURT ERRED IN APPROVING DEBTORS
PLAN WITHOUT AN EXPRESS REJECTION OF DEBTORS' REQUESTED
FINDINGS OF FACT ..................................................... 18

    **A.**   **Standard Of Review** ..................................... 18

    **B.**   **Introduction** ..................................... 18

**C.   No ESI Assumption Motion Currently Exists** ....................................20

**D.   The Request, As to Future Conduct, Seeks an Advisory Opinion** ....21

**E.   Findings of Fact Entered in Administrative Claims Proceedings Affect Only Those Claimants** ....................................24

II.   THE BANKRUPTCY COURT ERRED BY RENDERING VAGUE FINDINGS AND CONCLUSIONS IN ITS CONFIRMATION ORDER RELATING TO "CERTAIN ACTHAR RELATED ADMINISTRATIVE CLAIMS" [D.I. 3529] [D.I. 6660 AT ¶ V.]. ....................................27

A.   **Standard Of Review** ....................................27

B.   **The Court's Adopted Findings of Fact and Conclusions of Law** ......28

III.   CONCLUSION ....................................31

# CORPORATE DISCLOSURE STATEMENT

The undersigned counsel for Acument Global Technologies, Inc., certifies that this party is a non-governmental corporate party and that:

1. Its parent company is Fontana America, Inc., a Delaware Corporation and

2. No publicly held companies hold 10% or more of Acument Global Technologies, Inc.'s stock.

# TABLE OF AUTHORITIES

Cases

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S.

313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971) .....................................21

*Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ...........................................................19

*Hansberry v. Lee*, 311 U. S. 32, 40, 61 S.Ct. 115, 117, 85 L.Ed. 22 (1940)...........21

*Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas*

*Petroleum, Inc.),* 522 F.3d 575, 584 (5th Cir.2008)...........................................22

*In re Global Indus. Techs., Inc*., 645 F.3d 201, 209 (3d Cir.2011) .................15, 24

*In re Lazy Days' RV Ctr. Inc.,* 724 F.3d 418, 421 (3d Cir. 2013) .........................19

*In re United Operating, LLC*, 540 F.3d 351, 355 (5th Cir. 2008) .........................23

*Ojeda v. Louis Berger Group (Domestic), Inc.,* 2020 WL 5757805 (D. N.J.)........19

*Ruder v. CWL Invs. LLC*, 2017 U.S. Dist. LEXIS 117584 at *4–5, 2017 WL

3834783 (D. Ariz. July 27, 2017).......................................................................20

*Sanchez v. Santander Bank, N.A*., 2019 U.S. Dist. LEXIS 198094 at *16, 2019 WL

6050738 (D.N.J. Nov. 15, 2019) ........................................................................20

*Tidd v. Adecco USA, Inc.,* 2010 U.S. Dist. LEXIS 24785 at *9, 2010 WL 996769

(D. Mass. Mar. 16, 2010) ...................................................................................20

*United Industrial Workers v. Government of the Virgin Islands*, 987 F.2d 162, 169

(3d Cir.1993) ................................................................................21

*United States v. Cook*, 795 F.2d 987, 994 (Fed. Cir. 1986) ...................................20

Statutes
11 U.S.C. § 1123(b)(3) ....................................................................23

15 U.S.C. § 1 ...........................................................................16

15 U.S.C. § 2 ...........................................................................16

28 U.S.C. §158 .......................................................................... 5

Rules
Fed. R. Bankr. P. 8002................................................................... 5

Rule 8009 .............................................................................. 5

# JURISDICTIONAL STATEMENT

On October 12, 2020, Debtors in this action filed voluntary chapter 11 petitions for bankruptcy relief pursuant to 11 U.S.C. §§ 1101 *et seq*. The Appellants[1] (the Ad Hoc Acthar Group, *hereafter* "AHAG") in this action were unsecured creditors of the estate, but withdrew their claims, reserving their rights to protect their rights as litigants on appeal.

On March 2, 2022, the Bankruptcy Court entered its final order confirming the Amended Chapter 11 Plan [Bankr. D.I. 6660; APP169-APP596]. On March 11, 2022 Appellants filed their Notice of Appeal [D.I. 6743; APP597-APP1031]. On March 25, 2022, as set forth by Rule 8009, Appellants timely filed the designation of record and statement of issues on appeal. [Bankr. D.I. 6951 and 6952; APP1032-APP1036 and APP1037-APP1057].

This appeal is from a final order confirming a plan of reorganization. The District Court has appellate jurisdiction.

---

[1] Appellants consist of the following: the City of Rockford ("Rockford), Steamfitters Local Union No. 420 ("Steamfitters Local 420"), the International Union of Operating Engineers Local 542 ("Local 542"), United Association of Plumbers & Pipefitters Local 322 of Southern New Jersey ("Plumbers Local 322") and Acument Global Technologies ("Acument"), individually and on behalf of the classes of third party payors ("TPPs") and their beneficiaries that Rockford, Steamfitters Local 420 and Plumbers Local 322 seek to represent in their respective cases.

## STATEMENT OF THE ISSUES

1.      Did the Bankruptcy Court err by approving the Debtors' Plan which requires as a Condition Precedent to the Effective Date findings of fact and conclusions of law to be made by the Bankruptcy Court after confirmation of the Plan with respect to continuing violations of the antitrust laws, the Racketeer Influenced and Corrupt Organizations Act, state consumer fraud laws, common law fraud, negligent and intentional misrepresentation, conspiracy to defraud, aiding and abetting fraud and unjust enrichment? [Plan §VII ¶ 20].

2.      Did the Bankruptcy Court err by rendering vague findings and conclusions in its Confirmation Order as set forth "in the record of the Confirmation Hearing" [Bankr. D.I. 6660; APP169-APP596] and "before and at the Confirmation Hearing" [Bankr. D.I. 6660; APP169-APP596], including the record pertaining to the Court's *Opinion and Final Order* relating to "Certain Acthar Related Administrative Claims" [Bankr. D.I. 6660 at ¶ v; APP169-APP596], which findings and conclusions the Debtors, Reorganized Debtors, other unsecured creditors and/or others may seek to utilize in civil litigation outside the Bankruptcy Court to impact negatively the claims of Appellants against Non-Debtors without Appellants having been afforded procedural or substantive due process protections as to such findings and conclusions?

## STATEMENT OF THE CASE

### A.   STATUS AND STANDING OF APPELLANTS

Appellants herein had pre-petition claims for antitrust violations and Racketeer Influenced Corrupt Organizations Act violations, among other claims, against both the Debtor here, Mallinckrodt, and the Debtors' co-conspirators, the Express Scripts Entities[2]. Opting to preserve their viable claims against solvent Express Scripts Entities and knowing that no portion of the meager $100,000,000 settlement pool accorded to the unsecured creditors was ever likely to make a dent in the asserted billions in liability, Appellants withdrew all pending proofs of claim against Mallinckrodt in the bankruptcy. Appellants reserved their rights as litigants to object to and appeal any order that aggrieved them.

### B.   THE CURASCRIPT CONTRACT

On September 27, 2021, Debtors filed their Motion to Assume under seal. Attached to the Motion to Assume as Exhibit "B" was a proposed "amended" "Wholesale Product Purchase Agreement" with Priority Healthcare Distribution, Inc., d/b/a Curascript SD Specialty Distribution ("the "Curascript Contract"). The Curascript Contract was unsigned.

---

[2] The Express Scripts Entities included Express Scripts, Inc., Curascript SD Specialty Distribution Inc., United BioSource Corporation, and Accredo Health Group, Inc.

Nevertheless, by their Motion to Assume, Debtors sought an order from the Bankruptcy Court  authorizing the Debtors to assume" the Curascript Contract, and finding (i) that the Curascript Contract, as amended, and the parties' performance thereunder in accordance with the Contract's terms, does not violate the Sherman Act, and (ii) that any claims against the Debtors based in whole or in part on the assumption of the Curascript Contract or performance under any of its predecessors arose or will have arisen on or before the effective date of the Debtors' chapter 11 plan (the "Effective Date").

### C.   APPELLANTS' MOTION TO DISMISS THE ASSUMPTION MOTION

On October 1, 2021, Appellants filed a Motion to Dismiss for Lack of Jurisdiction the Debtors' Motion for Entry of an Order to Assume, as Amended, that Certain Wholesale Product Purchase Agreement with Priority Healthcare Distribution, Inc. (d/b/a CuraScript SD Specialty Distribution) [Bankr. D.I. 4538, 4539; APP1-APP6 and APP7-APP29] ("Motion to Dismiss"). The Motion to Dismiss asserted (1) the Bankruptcy Court cannot make the requested factual findings in the context of an assumption motion; and (2) the Bankruptcy Court lacks subject-matter jurisdiction because (a) the Assumption Motion was collusive litigation between the Debtors and the Express Scripts Entities, to which the Appellants were not a party, and (b) the Assumption Motion, to the extent that it

seeks any findings beyond the exercise of business judgment, sought an advisory opinion on the legality of an as-yet-unsigned contract.

After the Bankruptcy Court expressed some doubts about the validity of the Assumption Motion as a vehicle for findings of fact, Debtors and their Express Scripts Entity co-conspirators, pivoted to asking for the same advisory findings in an Adversary Proceeding.

### D.   THE ADVERSARY PROCEEDING

On October 14, 2021, the Debtors filed an Amended Complaint for Declaratory Relief and Objection to Certain Prepetition Claims captioned [Adv. D.I. 3; APP 1290-APP1340] against the Appellants, seeking the same relief as originally requested under the Assumption Motion.

After another hearing where the Bankruptcy Court again expressed its doubts as to its ability to make the requested findings, the parties worked through to what Appellants believed was a negotiated solution.

Debtors and Appellants worked toward a compromise and settlement of Debtors' Adversary Proceeding. Over the course of months, Debtors' counsel and Appellants' counsel exchanged numerous drafts of a proposed Consent Order, haggled over language via email and telephone conferences, and generally worked hard to forge a consensual agreement to resolve the myriad, complex issues presented by the Amended Adversary Complaint, and the related Debtors'

Assumption Motion. These negotiations culminated in a settlement agreement that all parties considered a final embodiment of their agreement. The embodiment was a Consent Order filed on Certification of Counsel.  On February 28, 2022, Debtors' counsel filed a stipulated Consent Order under Certification of Counsel.  [Adv. D.I. 73; APP1409-APP1431], thus outwardly manifesting their agreement with the terms of the Consent Order. Within hours of that filing, however, Debtors had a change of heart and sought to re-negotiate the material term of dismissal of the Adversary Proceeding, with prejudice.

After Appellants filed a Motion to Enforce Settlement [Adv. D.I. 79; APP 1437-1440], the Debtors filed a Notice of Dismissal without prejudice pursuant to Fed. R. Bankr. P. 7041 and Fed. R. Civ. P. 41 [Adv. D.I. 86; APP1476-APP1480].

### E.    CONTINUING EFFORTS TO GET JUDICIAL FINDINGS

The Debtors' inability to get a judicial stamp of approval on proposed findings related to the Curascript Contract did not stop with their failed Adversary Proceeding.  In their Amended Plan of Reorganization filed post-confirmation at page 135, paragraph 20, the Debtors included the following language:

> 20. An appropriate order or orders shall (a) approve the Debtors' assumption, pursuant to section 365 of the Bankruptcy Code, of that certain Wholesale Product Purchase Agreement by and between Mallinckrodt ARD LLC and Priority Healthcare Distribution, Inc. (d/b/a CuraScripts SD Specialty Distribution), relating to the wholesale purchase and distribution of Acthar Gel, as requested by the Debtors' ESI Contract Assumption Motion, (b) contain findings of fact and conclusions of law that such agreement does not constitute an

13

agreement in restraint of trade in violation of section 1 of the Sherman Act, 15 U.S.C. § 1 or the unlawful maintenance of monopoly power in violation of section 2 of the Sherman Act, 15 U.S.C. § 2, and (c) contain findings of fact and conclusions of law that no marketing conduct in connection with Acthar Gel undertaken by the Debtors after the Petition Date, evidence of which was adduced in the Bankruptcy Court in connection with the resolution of any Administrative Claims before or in connection with the Confirmation Hearing, gives rise to valid Claims (including under section 503(b) of the Bankruptcy Code) for violations of the Racketeer Influenced and Corrupt Organizations Act, state consumer fraud laws, common law fraud, negligent and intentional misrepresentation, conspiracy to defraud, aiding and abetting fraud, and unjust enrichment.

In spite of this attempt to obtain through judicial inadvertence what it could not obtain through direct action, the Bankruptcy Court's confirmation order contained this language:

287. For the avoidance of doubt, the inclusion of "Express Scripts, Inc." in Exhibit 5 to the Plan as a Released Co-Defendant shall not be interpreted to alter any rights or obligations among the Debtors and Accredo Health Group, Inc., CuraScript, Inc. d/b/a/ CuraScript SP Specialty Pharmacy, Evernorth Health Inc. f/k/a Express Scripts Holding Company, Express Scripts, Inc., Priority Healthcare Distribution, Inc. d/b/a CuraScript SD Specialty Distribution, United BioSource LLC f/k/a United BioSource Corp., or any of their past, present, or future parents, subsidiaries, affiliates, insiders, employees, officers, directors, professionals, or agents (collectively, the "ESI Parties"), and the ESI Parties shall not be treated as Released Co-Defendants, Co-Defendants, Co-Defendant Related Parties, or holders of Co-Defendant Claims, except insofar as such rights, obligations, or treatment are or relate to any Opioid-Related Activities, any Opioid Claim, or any Opioid Demand. For further avoidance of doubt, no aspect of this Confirmation Order should be construed to provide for a release of, alteration of, or findings as to any obligations of ESI Parties to unsecured creditors for Acthar, or the rights of such creditors to pursue claims against ESI Parties outside bankruptcy. Notwithstanding anything to the contrary herein, nothing in this Confirmation Order

14

shall preclude Priority Healthcare Distribution, Inc. (d/b/a CuraScript SD Specialty Distribution) ("CuraScript") from objecting to assumption of the Wholesale Purchase Agreement between Mallinckrodt ARD LLC and CuraScript prior to the Effective Date.

Thus, the Confirmation Order is at odds with the confirmed Plan, which requires the very findings the Confirmation Order makes clear will not be made and should not be implied. Paragraph 311 of the Confirmation Order provides:

311. To the extent that any provision of the Disclosure Statement, or any order entered prior to Confirmation (for avoidance of doubt, not including this Confirmation Order) referenced in the Plan (or any exhibits, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control. Unless otherwise provided in this Confirmation Order, to the extent that any provision of the Plan conflicts with or is in any way inconsistent with any provision of this Confirmation Order, this Confirmation Order shall govern and control.

It would appear that the Bankruptcy Court intended its order to control, yet, in spite of that, Appellees continued to act in direct conflict with the Confirmation Order. Shortly after Appellants filed the designation of record in this case, on March 30, 2022, Debtors filed a Motion For Entry Of An Order (A) Authorizing Rejection Of The Exclusive Wholesale Product Purchase Agreement With Curascript SD Specialty Distribution, Effective As Of April 22, 2022, And (B) Granting Related Relief [Bankr. D.I. 6997; APP1058-APP1077]. That request did not draw objections and an order approving the rejection and assumption of a new contract with FFF was

15

filed on April 11, 2022.  In so doing, it deprived paragraph 20 of the confirmed Plan of its force and effect in soliciting findings by the Bankruptcy Court.

In spite of that, or perhaps because of it, Debtors' efforts continued.  Although no longer an active defendant in the City of Rockford case owing to its discharge in bankruptcy, it joined with its co-conspirators (and former co-defendants), the Express Scripts Entities, in a joint status memorandum asserting:

> Rockford's assertion that "the language of ¶ 287 of the Bankruptcy Court's Confirmation Order (Ex. A) makes clear that nothing in the bankruptcy proceedings impacts this Court's adjudication of Rockford's rights against the Express Scripts Entities," is not correct.

Case 3:17-cv-50107 Document 570, at 9, attached as Exhibit A (emphasis added). Thus, in spite of a Confirmation Order that explicitly avoided making findings regarding co-conspirator Express Scripts, Debtors appear to have jointly asserted with Express Scripts in federal court in Rockford that the Confirmation Plan, and not the Confirmation Order control.  To the extent that the Confirmation Order failed to explicitly reject paragraph 20 of the Confirmation Plan, as amended, the order aggrieves the Appellants and warrants this appeal.

## SUMMARY OF THE ARGUMENT

This appeal asks a simple question: does the confirmed Plan, or the Confirmation Order control the disposition of the bankruptcy case, where the Confirmation Order explicitly says that it controls, but the Appellees claim

otherwise?  On the one hand, the Confirmation Plan requires the Court to make findings, post-confirmation, about certain antitrust activity.  On the other hand, the Confirmation Order appears clear that no such findings have been made, will be made, or are to be implied.  While it is spelled out explicitly that the Confirmation Order controls over the confirmed Plan [*see* Bankr. D.I 6660 at ¶ 311; APP 169-APP596], actions by Appellees and the Express Scripts Entities post-confirmation suggest they believe otherwise, threatening the enforcement of the Confirmation Order as written.  They have pursued positions in other courts directly contrary to the language of the Confirmation Order, based upon inconsistent language in the confirmed Plan.

In Point I, Appellants show the history of the negotiations that led to the incorporation of ¶ 287 of the Confirmation Order, and also show the statements made in the Confirmation Plan that conflict with the Confirmation Order.  First, the contract mentioned in the Plan, which is supposedly a contract with Curascript Inc., has been rejected and a new contract has been assumed with a different entity.  Second, Appellants argue that the language of the Confirmation Plan is inconsistent with the Confirmation Order because it essentially requested an advisory opinion from the Bankruptcy Court that the Court had previously refused to make several times.

# ARGUMENT

## I.   THE BANKRUPTCY COURT ERRED IN APPROVING DEBTORS PLAN WITHOUT AN EXPRESS REJECTION OF DEBTORS' REQUESTED FINDINGS OF FACT

### A.   STANDARD OF REVIEW

A district court reviews a bankruptcy court's legal conclusions *de novo* and its factual findings for clear error. *In re Global Indus. Techs., Inc*., 645 F.3d 201, 209 (3d Cir.2011). In the case at bar, the legal determination to confirm the Plan without specifically rejecting the request for findings of fact and conclusions of law as part of the Confirmation Order is legal error entitled to *de novo* review.

### B.   INTRODUCTION

The Bankruptcy Court erred in approving the Debtors' Plan to the extent that the confirmed Plan conflicted with the Confirmation Order. As drafted, and as consistently amended, the confirmed Plan requires, as a condition precedent to the Effective Date, findings of fact and conclusions of law be made by the Bankruptcy Court with respect to the claims asserted in the cases brought by the City of Rockford, Acument, and other Appellants' cases. [Bankr. D.I. 6660, Plan §VII ¶ 20; APP169-APP596].

Those violations, which are continuing in nature, are of the federal and state antitrust laws, the Racketeer Influenced and Corrupt Organizations Act, state consumer fraud laws, common law fraud, negligent and intentional

18

misrepresentation, conspiracy to defraud, aiding and abetting fraud and unjust enrichment.

The findings sought, which approve the Debtors' assumption, pursuant to section 365 of the Bankruptcy Code, of a certain Wholesale Product Purchase Agreement by and between Mallinckrodt ARD LLC and Priority Healthcare Distribution, Inc. (d/b/a CuraScripts SD Specialty Distribution), relating to the wholesale purchase and distribution of Acthar Gel, as requested by the Debtors' ESI Contract Assumption Motion[3], require that the order "contain findings of fact and conclusions of law that such agreement does not constitute an agreement in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 or the unlawful maintenance of monopoly power in violation of section 2 of the Sherman Act, 15 U.S.C. § 2."

These findings would presumably find that "no marketing conduct in connection with Acthar Gel undertaken by the Debtors after the Petition Date," was in violation of law.

The asserted basis for these findings rests with "evidence of which was adduced in the Bankruptcy Court in connection with the resolution of any Administrative Claims before or in connection with the Confirmation Hearing."

---

[3] This has been superseded by Debtors' request to assume a different agreement with a company named FFF. See, e.g., Bankr. D.I. 6997; APP1058-APP1077].

There are multiple problems with these requested findings, as set forth below.

## C.    NO ESI ASSUMPTION MOTION CURRENTLY EXISTS

On or about March 30, 2022, Debtors abandoned their attempt to assume the Curascript Specialty Distribution Agreement.  Debtors filed a Motion For Entry Of An Order (A) Authorizing Rejection Of The Exclusive Wholesale Product Purchase Agreement With Curascript SD Specialty Distribution, Effective As Of April 22, 2022, And (B) Granting Related Relief [Bankr. D.I. 6997; APP 1058-APP1077]. Debtors asserted in that motion:

> Certain plaintiffs have asserted that the CuraScript Agreement is, or forms part of, an antitrust conspiracy. These assertions are found not only in prepetition complaints …, and in repeated statements throughout these chapter 11 cases that plaintiffs will continue to file new lawsuits against the Debtors and CuraScript postbankruptcy, …

*Id*. at ¶ 8.

> Additionally, Debtors averred:

> Debtors have an interest in avoiding the cost of defending the CuraScript Agreement from meritless, post-effective-date challenges by litigious counsel.

*Id*. at ¶ 10.

Debtors have adopted a new distributor known as FFF that renders the plan, as most recently amended, in conflict with the Order.

> On March 29, 2022, in the ordinary course of business, ARD entered into a Distribution Purchase and Services Agreement with FFF Enterprises, Inc. ("FFF," and such agreement, the "New Distribution Agreement"). To the Debtors' benefit, (a) the New Distribution

Agreement covers the same scope of services and products as the CuraScript Agreement, (b) FFF has a proven ability to distribute pharmaceuticals like Acthar that are subject to certain special handling requirements, and (c) FFF has agreed to do so on terms that are at least approximately comparable economically to the CuraScript Agreement.

*Id*. at ¶ 13.

Debtors' request did not draw any objections to the rejection and assumption and an order approving the rejection and assumption of a new contract with FFF was filed on April 11, 2022. [Bankr. D.I. 7063; APP1085-APP1088]. Thus, to the extent that the Confirmation Order (entered prior to the pivot by Debtors to adopt a new distributor) could not have anticipated the pivot away from Curascript, and since the Curascript Contract no longer exists, the Confirmation Order can authorize no post-confirmation findings about a contract that is no longer part of the bankruptcy estate. The Confirmation Order should be clarified to make this clear.

**D.    THE REQUEST, AS TO FUTURE CONDUCT, SEEKS AN ADVISORY OPINION**

Even if the Curascript Contract still existed, the requested provisions in the confirmed plan could not be granted. Examine the request contained in the plan carefully, and this Court will find an overbroad request for an impermissible advisory opinion. Specifically, Debtors seek:

An appropriate order or orders … contain[ing] findings of fact and conclusions of law that such agreement does not constitute an agreement in restraint of trade in violation of section 1 of the Sherman Act, 15 U.S.C. § 1 or the unlawful maintenance of monopoly power in violation of section 2 of the Sherman Act, 15 U.S.C. § 2, and (c)

> contain[ing] findings of fact and conclusions of law that no marketing conduct in connection with Acthar Gel *undertaken by the Debtors after the Petition Date*, … gives rise to valid Claims … for violations of the Racketeer Influenced and Corrupt Organizations Act, state consumer fraud laws, common law fraud, negligent and intentional misrepresentation, conspiracy to defraud, aiding and abetting fraud, and unjust enrichment."

Plan at page 142, ¶ 20.

The Bankruptcy Court cannot adjudicate the rights of parties that are not before it.  In *Ojeda v. Louis Berger Group (Domestic), Inc.,* 2020 WL 5757805 (D. N.J.), an analogous situation existed.   There, the District Court was asked for equitable tolling:

> … not for any party before the Court, but rather *for the potential set of plaintiffs who may, one day, elect to opt into the action*. This Court will not enter what would amount to an advisory opinion on hypothetical facts.

*Id*. at 2. (emphasis supplied)  In much the same way, Debtors here sought an opinion that their conduct in the past was not in violation of the antitrust and consumer protection statutes, but also, that it would not violate those laws going forward through conduct "undertaken by the Debtors after the Petition Date."  That clearly calls for the Bankruptcy Court to examine their future course of conduct and conclude, on hypothetical facts for plaintiffs that do not presently exist, that the conduct is permissible.  "Federal courts have no jurisdiction to render advisory opinions. Put another way, they 'may not decide questions that cannot affect the rights of litigants in the case before them or give opinions advising what the law

22

would be upon a hypothetical state of facts.' " *In re Lazy Days' RV Ctr. Inc.,* 724 F.3d 418, 421 (3d Cir. 2013) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).

Overwhelmingly, in cases where parties are not presently before the courts, those courts have considered the issue and agreed with this analysis. *Sanchez v. Santander Bank, N.A.*, 2019 U.S. Dist. LEXIS 198094 at *16, 2019 WL 6050738 (D.N.J. Nov. 15, 2019) ("[P]otential opt-in [p]laintiffs are not before the Court. Consequently, any decision as to them would constitute an impermissible advisory opinion."); see also *United States v. Cook*, 795 F.2d 987, 994 (Fed. Cir. 1986) (same); *Ruder v. CWL Invs. LLC*, 2017 U.S. Dist. LEXIS 117584 at *4–5, 2017 WL 3834783 (D. Ariz. July 27, 2017) (same); *Tidd v. Adecco USA, Inc.,* 2010 U.S. Dist. LEXIS 24785 at *9, 2010 WL 996769 (D. Mass. Mar. 16, 2010) ("Because these persons have not yet opted into the case, the plaintiffs are, in effect, asking for an advisory opinion, which the Court cannot issue.").

Debtors have attempted a subtle sleight of hand here.  Specifically, certain Acthar Insurance Claimants ("AIC") in the bankruptcy sought to litigate their narrow administrative claims before the Bankruptcy Court.  However, the AIC was not on the same footing before the Bankruptcy Court as the Appellants here.  Those claimants litigated their claims, and lost.  They are barred from pursuing the

Debtors.[4]  But that finding cannot be bootstrapped to the Express Scripts Entities only sued by Appellees[5] in some kind of tortured offensive collateral estoppel.  The City of Rockford was not a party to, or bound by that decision.  It does not suffice to simply say that the conduct is the same and the judgment based on the same facts should be applied to non-parties to the AIC proceedings.

### E.   FINDINGS OF FACT ENTERED IN ADMINISTRATIVE CLAIMS PROCEEDINGS AFFECT ONLY THOSE CLAIMANTS

Debtors' actions in drafting the Plan act as a catspaw for their co-conspirators, the Express Scripts Entities.  What Debtors seek for their co-conspirators is the ability to use the Bankruptcy Court's findings for purposes of offensive collateral estoppel.  The Express Scripts Entities suggest, in pleadings filed in the Rockford case, that because the Bankruptcy Court, *sans* jury, reached a conclusion that no antitrust violation occurred as to the Acthar Insurance Claimants, this somehow precludes litigation of antitrust claims brought by these Appellants in that Article III Court.

It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S.

---

[4] In fact, the AIC has filed a separate appeal from the Confirmation Order and is pursuing such appeal in this Court.

[5] The AIC did not sue any Express Scripts Entities.

313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971); *Hansberry v. Lee*, 311 U. S. 32, 40, 61 S.Ct. 115, 117, 85 L.Ed. 22 (1940).   Application of collateral estoppel requires consideration of a number of factors. Traditionally, courts have required the presence of four factors before collateral estoppel may be applied: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action. *United Industrial Workers v. Government of the Virgin Islands*, 987 F.2d 162, 169 (3d Cir.1993).

Here, the parties were not in privity in Bankruptcy Court, and the factual and legal issues are not the same.   Moreover, the scant recitation of the issues framed in the confirmed Plan would give a reviewing court no set of facts upon which to premise collateral estoppel.   For these reasons, the Confirmation Order, and not the confirmed Plan should control, as the Confirmation Order explicitly provides. However, without a superintending, clarifying order from this Court, Debtors and the Express Scripts Entities will be free to suggest such collateral estoppel effect in direct contravention of the language of the Confirmation Order.

**F.   DEBTORS SHOULD HAVE NO CONCRETE OR PARTICULARIZED INTEREST IN ASSISTING THEIR ALLEGED CO-CONSPIRATORS TO AVOID LIABILITY FOR THE SAME CONDUCT THAT PUT THEM IN BANKRUPTCY**

The key question the Court should ask here is: why is it in Debtors' interest to seek findings of fact and conclusions of law that have no impact on Debtors[6] liabilities, but only seek to benefit a co-conspirator?

"The filing of a bankruptcy petition creates an estate that is comprised of, among other things, 'all legal or equitable interests of the debtor in property as of the commencement of the case.' " *Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.),* 522 F.3d 575, 584 (5th Cir.2008) (quoting 11 U.S.C. § 541(a)(1)). "[R]ights of action such as claims based on state or federal law," are among the legal and equitable interests of the debtor that become part of the bankruptcy estate. *Id.* (internal quotations omitted). In a Chapter 11 bankruptcy where the debtor assumes debtor-in-possession status, the debtor obtains most of the powers of a bankruptcy trustee, including the power to pursue claims belonging to the estate. *In re United Operating, LLC*, 540 F.3d 351, 355 (5th Cir. 2008) (citing 11 U.S.C. § 1107(a)).

In general, when a Chapter 11 reorganization plan is confirmed by the bankruptcy court, the debtor loses its debtor-in-possession status and with it,

---

[6] Upon the Effective Date, Debtors, as an entity, cease to exist, as does the Debtors' estates.

standing to pursue the estate's claims. *Id*. Section 1123(b)(3) of the Bankruptcy Code, however, allows a debtor to retain causes of action possessed by the bankruptcy estate by providing for the retention of such claims in its reorganization plan. See 11 U.S.C. § 1123(b)(3).  Here, the Debtor has not reserved any claims against Appellants.

Since the Debtors no longer exists, and the Reorganized Debtor is pursuing a different distribution arrangement with a different company, the Debtors have no standing to seek findings of fact post-confirmation for its pre-confirmation relationships and conduct, and neither does the Reorganized Debtor.  For this reason alone, the Plan as proposed should have been rejected to the extent it is inconsistent with such outcome, or the Court should have excised the problematic provisions of the proposed Plan prior to entry of the Confirmation Order.

## II.   THE BANKRUPTCY COURT ERRED BY RENDERING VAGUE FINDINGS AND CONCLUSIONS IN ITS CONFIRMATION ORDER RELATING TO "CERTAIN ACTHAR RELATED ADMINISTRATIVE CLAIMS" [D.I. 3529] [D.I. 6660 AT ¶ V.].

### A.   STANDARD OF REVIEW

A district court reviews a bankruptcy court's legal conclusions *de novo* and its factual findings for clear error.  *In re Global Indus. Techs., Inc*., 645 F.3d 201, 209 (3d Cir.2011).  In the case at bar, the legal determination to approve the plan of confirmation without specifically rejecting the request for findings of fact is legal error entitled to *de novo* review.

27

**B.  THE COURT'S ADOPTED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The Bankruptcy Court, in its Confirmation Order, adopted certain conclusions of law and findings of fact that it had made throughout the course of the case.  It did so in paragraph 1 of its opinion:

> 1.  The findings and conclusions set forth herein, in the record of the Confirmation Hearing, and in the Confirmation Opinion constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

[D.I.6660 ¶ 1; APP169-APP596].  Further in the opinion, the Court adopted the findings and conclusions from the Acthar Insurance Claimants[7] Administrative Claim case. The relevant portion of that paragraph follows:

> 95. The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. … (e) together with the Court's Opinion and Final Order [Docket No. 5886] denying the Motion Of Attestor Limited And Humana Inc. For Entry Of An Order Allowing And Compelling Payment Of Administrative Claims Pursuant To Section 503(B) Of The Bankruptcy Code [Docket No. 2159] and sustaining the Debtors' Objection to Certain Acthar-Related Administrative Claims [Docket No. 3529],

---

[7] The Acthar Insurance Claimants (AIC) were principally Humana and Attestor. Humana is a Pharmacy Benefit Manager, like Express Scripts, with its own specialty pharmacy, like Express Scripts.  The gestalt of their claim against Debtors was that by acquiring the drug Synacthen, Debtors engaged in antitrust conduct.  Unlike the City of Rockford and the Appellants here, who sued both Mallinckrodt and all of the Express Scripts Entities, the AIC only sought a make-whole remedy from Debtors.

establishes that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.

[Bankr. D.I. 6660 ¶ 95; APP169-APP596].  In the referenced opinion and final order the Bankruptcy Court concluded, as to the Acthar Insurance Claimants only, that they lacked antitrust standing:

> Accordingly, I find that the AICs have failed to present sufficient evidence to support a conclusion that but for Debtors' acquisition of the Synacthen Assets a competitor would have developed either Synacthen or another long-acting synthetic ACTH product that could compete against Acthar. Having failed to prove a causal connection between Debtors' alleged illegal conduct and their damages, the AICs have failed to establish requisite standing to maintain a claim under the Sherman Act and, accordingly, an administrative claim under the Bankruptcy Code. Because the AICs lack standing, it is not necessary to address other antitrust elements, including damages.

5886 at 24.  With respect to state antitrust issues, those claims were abandoned in the Bankruptcy Court [Bankr. D.I. 5886 at 24; APP133- APP168].  Regarding the Racketeer Influenced Corrupt Organizations Act, the Court found that the AIC did not meet their burden under the various theories they espoused. [Bankr. D.I. 5886 at 27; APP133- APP168].   Finally, examining the assertion that doctors were paid as speakers to push the product to other physicians, and applying a standard that is at odds with the law it interprets, the Court concluded that the AICs failed to offer evidence that any physician prescribed Acthar against their better judgment.[8]

---

[8] Prescribing "against their better judgment" was never the thrust of the AIC complaint.  The issue was whether their judgment was corrupted by paid "experts" advocating its use.

Importantly, however, in their role as a pharmacy benefit manager, the Court found that "Humana never took any measure to stop covering Acthar prescriptions made by paid speakers despite having the information of which physicians participated in the Debtors' speaker programs and acknowledging the audit capabilities to address any concerns." *Id*. at 34. This was fatal to the AIC claims.

Appellants' issue here is that the findings and conclusions are so broad, vague, and sweeping as embodied in the final opinion and order, as well as in the Confirmation Order, that an uncritical review of the order might suggest to a district court that all litigants pursuing Acthar claims, and especially those pursuing a huge pharmacy benefit manager like Express Scripts, have no antitrust standing, and can't adduce evidence in support of their claims. This simply is not true. The Bankruptcy Court never heard the City of Rockford's evidence as to the conduct of any Express Scripts Entities, or any of the evidence of any of the other Appellants.[9]

Appellants seek a review of the Confirmation Order and a Fed. R. Civ. P. 60 correction of the Confirmation Order such that it makes clear that the order adopted in Paragraph 95 applies solely as to the Acthar Insurance Claimants.

---

[9] While Appellees were entitled to fact-finding in the context of their bankruptcy, Express Scripts had no such entitlement, and an attempt to bootstrap those findings in Article III litigation would produce serious constitutional and separation of powers problems.

### III.    CONCLUSION

Appellants respectfully submit that the Confirmation Order creates unnecessary confusion as to their litigation rights outside bankruptcy in that it failed to excise from the Plan those elements of relief that could not be granted. Notwithstanding the Bankruptcy Court's statement in paragraph 287 that no findings were made, the Appellees have taken the position (and will continue to do so) that such findings were, in fact, made as to these Appellants.   For these reasons, Appellants request that the Confirmation Order be amended and clarified with language that explicitly rejects Paragraph 20 of the Plan.

Dated: June 13, 2022
Wilmington, Delaware

**CIARDI CIARDI & ASTIN**

*/s/ Daniel K. Astin*
Daniel K. Astin (No. 4068)
1204 North King Street
Wilmington, DE  19801
Telephone: (302) 384-9541
Facsimile: (302) 658-1300
dastin@ciardilaw.com

 -and-

Albert A. Ciardi, III, Esq.
Walter W. Gouldsbury III, Esq.
(*Pro hac vices* forthcoming)
1905 Spruce Street
Philadelphia, PA 19103
Telephone: (215) 557-3550
aciardi@ciardilaw.com

wgouldsbury@ciardilaw.com
*Attorneys for Appellants*

-and-

**HAVILAND HUGHES**
Donald E. Haviland, Jr.,
Esquire
(*Pro hac vice* forthcoming)
201 S. Maple Ave., Suite 110
Ambler, PA 19002
Telephone: (215) 609-4661
Facsimile: (215) 392-4400
haviland@havilandhughes.com

-and-

Dion G. Rassias, Esquire
Jillian E. Johnston, Esquire
(*Pro hac vice* forthcoming)
THE BEASLEY FIRM, LLC
1125 Walnut Street
Philadelphia, PA  19107
T: 215-592-1000
dgr@beasleyfirm.com
Jill.johnston@beasleyfirm.com

-and-

James R. Bartimus, Esquire
Anthony L. DeWitt, Esquire
(*Pro hac vices* forthcoming)
BARTIMUS, FRICKLETON,
ROBERTSON, RADAR PC
11150 Overbrook Road
Leawood, KS 66211
(913) 266-2300
(913) 266-2366 (fax)

*Attorneys for Appellants*